Jeanne M. Weisneck, Esq.
WDNY (JW4815)
Law Office of Jeanne M. Weisneck
485 Central Park West, Suite 3A
New York, New York 10025
(917) 651-7232 (T)
(646) 370-4727 (F)
jweisneck.esq@gmail.com
*Attorney for Defendant RM Media, Ltd.*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| LISA COPPOLA LLC d/b/a THE COPPOLA FIRM,<br><br>Plaintiff,<br><br>v.<br><br>MATHEW K. HIGBEE, ESQ., HIGBEE & ASSOCIATES NICHOLAS YOUNGSON, and RM MEDIA, LTD,<br><br>Defendants. | Case No. 1:19-cv-00678-CCR<br><br>DECLARATION OF NICHOLAS YOUNGSON IN SUPPORT OF DEFENDANT RM MEDIA'S MOTION TO DISMISS PURSUANT TO F.R.C.P. §§ 12(b)(2), 12(b)(5) & 12(b)(6) |
|---|---|

### DECLARATION OF NICK YOUNGSON

NICK YOUNGSON declares the following pursuant to 28 U.S.C. §1746:

1. I am submitting this Declaration solely in my capacity as CEO of Defendant RM Media, Ltd. [hereinafter "RM"] in support of RM's Motion to Dismiss the within action pursuant to F.R.C.P. §§ 12(b)(2), 12(b)(5) & 12(b)(6) and to otherwise exercise its discretion and decline to address the preemptive Request for a Declaratory Judgment and/or to exercise pendent jurisdiction over the state law claim (should the Court deny RM's Motion to Dismiss, RM will proceed on the merits). In the meantime, by filing this Motion, RM is not consenting to the jurisdiction of the Court or otherwise appearing in the action.

1

2. RM is a foreign company created under and pursuant to the laws of the United Kingdom [hereinafter "UK"] with a UK registered office address of Suite 11, Stanley Grange, Ormskirk Road, Knowsley Village, Merseyside, United Kingdom, L34 4AR. RM has no contacts with the State of New York and maintains no presence in the State of New York.

3. Although I am personally named as a defendant herein, *I am not submitting this Declaration in my capacity as an individual and I am not consenting to the jurisdiction of the Court.* I was never served with the Summons and Complaint; I am not the owner of the registered copyrights referenced in the Complaint, and I have no contacts with or maintain any presence in the State of New York.

4. RM was served through its accountant's office at some point earlier this month. Those papers were then forwarded to me in my capacity as CEO of RM. I subsequently sought representation from Jeanne M. Weisneck, an attorney in New York, who has represented RM in previous litigation. She was on vacation but agreed to address the matter when she returned. Her Declaration is attached hereto.

5. As stated in her Declaration, she reviewed the documents upon her return and informed me that the matter was pending in the Western District of New York, and that she was not admitted to practice before that Court, but could become admitted by obtaining a Certificate of Good Standing from the Southern District of New York and filing it, along with other such paperwork, with the Western District of New York. She was not sure how long it would take but did not think that it would take too long (*see* Weisneck Declaration). I was informed early this week that she was just admitted to the WDNY and is now able to file paperwork on RM's behalf. However, because of the delay, it is possible that the within papers may be filed late.

6. My attorney has informed me that no Affidavit of Service of Process has been filed with the Court, so she cannot be sure exactly when RM was served; whether that service was proper; or when RM's time to respond began to run. For that reason and based on her recommendation, I am including in this Motion grounds for dismissal under FRCP § 12(b)(5) on the off chance that the Motion is untimely. If that is the case, RM asks that the Court accept the Motion *nunc pro tunc*, in which case, RM will withdraw any challenge to the service of process on RM.

7. The previous litigation handled by Ms. Weisneck referenced, *supra*, is also referenced in the Complaint – and misleadingly so (*see* Complaint at ¶45). That case, *Meyer, Suozzi, English & Klein, P.C. v. Higbee et al.*, No. 18-CV-03353 (EDNY) is being cited by Plaintiff-law firm as evidence of an alleged RICO conspiracy between the UK Defendants and Higbee Defendants. Contrary to the statements made by Plaintiff, however, the Plaintiff in Meyer Suozzi *voluntarily dismissed the action against the UK Defendants* pursuant to Rule 41(a)(1)(A)(i) (*see* **Exhibit A** attached hereto).

8. The Motion to Dismiss filed by the remaining Defendants (Mathew K. Higbee and Higbee & Associates [hereinafter "Higbee Defendants"]) was granted without prejudice, and while Plaintiff in the EDNY case subsequently filed an Amended Complaint against the Higbee Defendants, which is currently pending, *the Amended Complaint does not name the UK Defendants*. The first page of the electronically-filed Amended Complaint is attached hereto as **Exhibit B**.

## FACTS

9. I am a professional photographer by trade. RM Media Ltd. is a stock photography company that I founded which supplies professional photographic images, often of common items

3

or locations, intended to be used and/or licensed for commercial design purposes. RM's content library consists of over 30,000 unique images available for licensing, *all of them created and photographed by me*. Stock photography has been utilized for decades, and with the advent of digital photography, the conditional use and licensing of stock images has become routine. RM is but one company of hundreds of companies that provide this service.

10. RM offers its stock images through a series of affiliate websites including the websites "Blue Diamond Gallery" (*see* http://www.thebluediamondgallery.com/terms-and-conditions.html) and "Picpedia" (*see* http://www.picpedia.org/terms-and-conditions.html) used by Plaintiff to obtain the copyrighted images at issue (*see* Complaint at Exhibit D). The web sites are "Business to Business web site[s] supplying images to web site designers article writers and publishers for use in the course of their business" (*see* Complaint at Exhibit D, pages 3, 6, 9, 12 & 15).

11. RM Media offers two licensing options for those wishing to use said content. Under the first option, RM Media offers the majority of its content for a paid licensing fee. Under the second option, RM Media offers a limited portion of its content library for promotional purposes (including the copyrighted works that gave rise to this action) for license under a Creative Commons Attribution-ShareAlike 3.0 Unported (CC BY 3.0), which allows the use of certain images for free "subject to the terms of the license [and] [n]o license is granted unless the licensing terms, including attribution are met" (*see* Complaint at Exhibit D at pages 1-15).

12. The images can be offered for free because they generate business for RM by requiring the Licensee to attribute the image to RM and to provide "a link to one of RM Media's web sites" (*see* Complaint at Exhibit D at pages 3, 6, 10, 12 & 15). In addition to the aforementioned language being clearly set forth immediately under the heading "Free Images," a

direct link to the full CC License is provided (*see* Complaint at Exhibit D pages 1-15). The CC License, itself, requires that the licensee "give appropriate credit, provide a link to the license, and indicate if changes were made" (*see* Complaint at Exhibit D, pages 1-15). A full copy of the CC License Deed and Legal Code referenced in Exhibit D of the Complaint is attached hereto as **"Exhibit C"**.

13. The Creative Commons License ("CC License") was not created by RM. The CC Licenses offered by RM on its websites were not drafted by RM. CC Licenses were developed and are published by a non-profit that provides free copyright licenses in order to make a simple and standardized way to give the public permission to share and use creative work online. *See* Exhibit A; *see also* http://www.creativecommons.org/about. They are legal and widely used.

14. In this case, before Plaintiff-law firm could download the five copyrighted images pursuant to the CC license option, Plaintiff-law firm would have had to scroll through the terms and conditions regarding the licensed use of the image as depicted on the screen (*see* Complaint at Exhibit D). Plaintiff-law firm acknowledges in the Complaint that it did so – and then used said images without complying with the terms and conditions of use to which it had agreed (*see* Complaint at ¶¶ 32, 47 & 63; Complaint at Exhibits B-D).

15. Instead, Plaintiff-law firm is arguing that stock photographs that depict common images are not entitled to copyright protection because "they are not sufficiently creative" (*see* Complaint at ¶ 60). That is false. Stock photos may be registered with the United States Copyright Office and are protected by United States Copyright Law.

16. As stated below, the images were properly registered with the Copyright Office, and RM (and other copyright holders) should be able to rely on the Certificates of Registration provided to them by the U.S. Government. In fact, the specific images at issue here were

inspected by the Copyright Office before it issued the Certificates of Registration, as four out of the five images were registered as a collection only with like images (for example, images of road signs with different text), and not as part of a collection of different images wherein one image could slip past the scrutiny of the Copyright Office.

17. In fact, the licensing and/or conditional use of stock photography is common and serves the public good by providing small companies and individuals use of professional commercial images for a reasonable fee or for free subject to certain terms and conditions (like, in this case, providing attribution to RM and a link to its web site). These options offer an alternative to hiring a professional photographer, which can be cost-prohibitive for a small business.

18. Of course, Plaintiff-law firm – or any other commercial licensee – can avoid stock photography websites altogether by photographing and uploading its own "effortless and mundane" images (*see* Complaint at ¶ 1), but for whatever reason, Plaintiff-law firm chose not to do so. Instead, Plaintiff-law firm chose to peruse some of RM's stock photography websites for its desired images and to use five such images to which RM owns the copyrights – without adhering to the terms to which it agreed as a condition of use (*see* Complaint at ¶¶ 32, 47 & 63; Exhibits B-D of the Complaint).

19. By acknowledging that it did not read the terms and conditions of the contract to which it agreed, as stated and cited *supra*, Plaintiff-law firm has demonstrated incompetence and/or negligence. By bringing this preemptive lawsuit alleging that RM and its attorney, Higbee, are engaged in a RICO conspiracy to defraud and extort money from Plaintiff-law firm (and others) by virtue of the attorney-client relationship and Higbee's attempts to defend RM's

copyrights, Plaintiff-law firm has engaged in frivolous, malicious and sanctionable activity, as said allegations are not only *unsupported* by facts, they are *contrary to facts*.

20. Specifically, Plaintiff-law firm alleges *contrary to available evidence* that RM and Higbee are owned, controlled and operated in whole or in part by the other (see Complaint at ¶¶10-15) and that they are engaged in a RICO conspiracy to defraud and extort Plaintiff and others based on Higbee's defense of RM's copyrights, specifically the sending of demand letters or other such efforts (*see* Complaint at ¶¶ 34, 41-45, 51-52, 64-91).

21. With respect to the allegation that RM and Higbee are one and the same, that allegation is *contrary* to the information contained in the respective corporate filings by both entities, which filings are required by law, maintained by government entities, and freely available to the public. It would seem that Plaintiff-law firm made no effort whatsoever to review the corporate filings of either entity, each of which are available online.

22. With respect to RM, its corporate filings are a matter of public record and can be accessed for free at: https://beta.companieshouse.gov.uk/company/10103835/filing-history. Those records clearly show that the only owner/officer of the company is myself, and that neither Mat Higbee nor Higbee & Associates is a shareholder, affiliated with or has any control over RM Media. A copy of the relevant UK Companies House corporate record is attached hereto as **"Exhibit D"**. As stated, *supra*, Plaintiff could have discovered this by searching the aforementioned official government records available online.

23. Likewise, neither RM nor myself have any affiliation, interest or control over Higbee, which would be apparent from Higbee's corporate records, which records should be on file with the appropriate governing/regulatory entity (the State of California, I would imagine).

7

Thus, Plaintiff-law firm either was unaware that such information was readily available or knowingly disregarded this information or the availability of this information.

24. In any case, I discovered that Plaintiff-law firm was using five of RM's copyrighted images on its law firm website without attributing the image and/or providing a link to the License and identifying any changes as required for the CC License (and/or without purchasing a license to use the images in lieu of the aforementioned CC License requirements) and despite Plaintiff-law firm's agreement to do so.

25. The five images at issue are registered with the United States Copyright Office. RM Media is the assignee and sole rights holder of each of the following five Copyrighted images (hereinafter the "Copyrighted Images") at issue in this action:

| Registration # | Date of Registration w/US Copyright Office | Title of Work |
|---|---|---|
| VAu 1-306-491 | 1-29-2018 | highway-signs-18-01-29 |
| VAu 1-306-497 | 2-14-2018 | handwriting-images-18-02-14 |
| VAu 1-301-124 | 11-4-2017 | typewriter-images-17-10-04 |
| VAu 1-279-012 | 11-30-2016 | clipboard-images-16-11-30 |
| VAu 1-248-878 | 06-10-2016 | still-images-16-06-10 |

Attached hereto as "**Exhibit E**" are copies of the Certificates of Registration for each image. Attached hereto as "**Exhibit F**" are copies of the Assignments to RM for each of the Copyrights.

26. RM subsequently retained Higbee as its attorney to defend and enforce its copyrights. Higbee is but one of several U.S. law firms used by RM for that purpose. In each case, RM provides each legal counsel with a *letter of representation and power of attorney limited to the defense of RM's copyright(s)*, which allows retained counsel to

8

defend RM's copyrights however the law firm deems appropriate, which could range from sending a "cease and desist" letter, demanding compensation for an infringement, or initiating litigation. RM relies on the law firms that it retains to make all legal decisions, including determining what is legally viable and how best to proceed.

27. Contrary to Plaintiff-law firm's allegations, the letter of representation/power of attorney at issue here is not a "full power of attorney" (*see* Complaint at ¶ 13; Complaint at Exhibit A). It is not a general power of attorney. It is a letter of retainer/power of attorney *limited to Higbee's defense of RM's copyrights*, which was executed after RM retained Higbee for that purpose. The primary purpose of the letter of retainer/limited power of attorney from RM to its counsel is my convenience. It means that I do not have to respond to each and every communication regarding every little issue, which is particularly important to me given the time difference between the UK and the US.

28. The use of a letter of representation/limited power of attorney is customary business practice in the UK, and as I understand it, the United States as well. Moreover, my current attorney informs that it really doesn't differ that much from a legal retainer agreement in what it does and doesn't allow a law firm to do on RM's behalf, which is whatever the law firm deems necessary to protect RM's copyrights, whether that be making phone calls, sending "cease and desist" or demand letters, or initiating litigation.

29. In this case, it appears that Higbee, acting as attorney for RM, sent a letter or otherwise communicated with Plaintiff-law firm regarding its infringement of RM's copyrights (see Complaint at ¶¶ 34-41), and in response, Plaintiff-law firm - despite acknowledging its wrongdoing (and I believe, for the purpose of harassment and intimidation) - initiated this preemptive action alleging a RICO conspiracy by RM and its

9

attorney (and the principals of each) to defraud consumers through use of the United States mail and to extort money from Plaintiff-law firm. The allegations are false and the Complaint is entirely devoid of supporting facts.

30. Plaintiff's First Cause of Action seeks a declaratory judgment of non-infringement (*see* Complaint at ¶¶ 53-63). First, this claim is frivolous as the Complaint itself acknowledges the infringement. Second, there is no personal jurisdiction over RM (or myself) as it does not maintain any presence or have any contacts with the State of New York. Finally, according to my attorney, this type of preemptive action is an inappropriate use of a declaratory judgment action and the Court may, in its discretion, decline to address this matter. I ask that it do so.

31. Plaintiff's Second Cause of Action asks the Court to require me – a UK citizen - to divest myself of my interest in a UK company and also to order the dissolution of a UK company (and a California law firm) (*see* Complaint at ¶¶ 64-84). Only UK authorities would be able to order the divestment of a UK citizen's interest in a UK company or to order the dissolution of a UK company, and Plaintiff-Law Firm should know that. Plaintiff-law firm also seeks a financial windfall in the form of treble damages (*see* Complaint at ¶ 84).

32. To the extent that Plaintiff-law firm is alleging a conspiracy based on other facts, none are alleged in the Complaint, and I am informed by my attorney that the separate RICO Case Statement required by the Local Rules of Civil Procedure to be filed with the Court (for exactly this reason) was not filed, and that the failure to do so is also a basis for dismissal.

33. In addition, the alleged conspiracy seems to be entirely based on RM having retained Higbee as its attorney. If that could constitute a conspiracy, every attorney-client relationship would be subject to a RICO lawsuit. As stated earlier, RM's sole relationship to Higbee is that of client and attorney, and a simple check of publicly-available online records would have confirmed this. RM's execution of a letter of representation/limited power of attorney to Higbee for the purpose of defending RM's copyrights doesn't change this.

34. Finally, Plaintiff's Third Cause of Action is a supplemental state claim under Section 349 of New York's General Business Law (*see* Complaint at ¶¶ 85-91). The Statute, as I understand it, is a consumer protection statute that applies only to those "engaged in the sale of consumer goods and services" within New York State, and requires that specific injury and damages be alleged as a basis for maintaining a private cause of action.

35. Again, RM is a UK company located in the UK. RM does not maintain a presence in the State of New York or engage in any business practices in New York. Nor does its website target citizens or businesses in New York. RM's websites are available to anyone from anywhere in the world where access to the internet is available.

36. Nor does RM engage in "the sale of consumer goods and services." RM's websites deal exclusively with commercial/business licensees, which is clearly stated on its websites. Precisely because it is dealing with commercial licensees and *not* consumers, there is promotional value in licensing certain images for free in exchange for attribution and a link to RM's other websites (*see* Complaint at Exhibit D). If not, RM wouldn't provide that service.

For the reasons stated above and set forth in the accompanying Notice of Motion, Declaration of Jeanne M. Weisneck, Esq. and Memorandum of Law, RM respectfully requests that the Court accept this Motion and dismiss the Complaint in its entirety pursuant to FRCP §§12(b)(1), 12(b)(2) & 12(b)(6), ~~and LRCP 9~~ and/or otherwise exercise its discretion and decline to address Plaintiff-law firm's preemptive Request for a Declaratory Judgment and/or to exercise pendent jurisdiction over the State claim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this August 26, 2019

/s/ _____
RM Media Ltd. by ~~CEO~~ Nicholas Youngson