UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

LISA COPPOLA, LLC d/b/a THE COPPOLA FIRM,
    Plaintiff,

v.

MATHEW K. HIGBEE, ESQ., NICHOLAS YOUNGSON, RM MEDIA, LTD., and HIGBEE & ASSOCIATES,
    Defendants.

Case No. 1:19-cv-00678

## OPINION AND ORDER GRANTING HIGBEE DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART RM MEDIA LTD.'S SECOND AMENDED MOTION TO DISMISS.
(Docs. 8 and 15)

On May 24, 2019, Plaintiff Lisa Coppola, LLC, doing business as The Coppola Firm ("Plaintiff"), filed a Complaint against Defendants RM Media, Ltd. ("RM"); Nicholas Youngson, a photographer who allegedly owns RM; and RM's legal counsel, Mathew K. Higbee, Esq.[1] and Higbee & Associates (the "Higbee Defendants") (collectively, "Defendants"). Plaintiff asserts that it is the victim of Defendants' fraudulent scheme in which they offer images on the internet "free for use" subject to certain licensing requirements and then seek damages for copyright infringement from those who use the images without attribution.

Plaintiff's Complaint seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201 (the "DJA"), and asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and New York General Business Law § 349 ("GBL § 349"). In addition to a declaratory judgment,

---

[1] Plaintiff identifies Defendant Higbee as "Matthew K. Higbee" in the Complaint. The Clerk of Court is directed to amend the caption of this case to reflect the correct spelling of this defendant's first name.

Plaintiff seeks an injunction, statutory remedies under RICO, compensatory damages, attorney's fees, and costs. Pending before the court are motions to dismiss filed by the Higbee Defendants (Doc. 8) and RM (Doc. 15). Plaintiff opposes the motions.

Plaintiff is represented by Lisa A. Coppola, Esq., and Erin Kathleen Ewell, Esq. The Higbee Defendants are represented by Rayminh L. Ngo, Esq. RM is represented by Jeanne M. Weisneck, Esq. Defendant Nicholas Youngson has not responded to the Complaint or appeared in the case, and it is unclear whether he has been properly served.

## I. The Complaint's Allegations.

Plaintiff, a law firm based in Buffalo, New York, publishes "educational blog posts" on its website regarding changes in the law. (Doc. 1 at 5, ¶ 25.) These blog posts are sometimes accompanied by a "relevant image[,]" *id.*, ¶ 26, and Plaintiff alleges it has a policy that all images it uses must be owned, created, or licensed for use by the firm unless they are "royalty-free." *Id.*, ¶ 28. Plaintiff asserts that it "generally does not generate revenue" from its blog posts. *Id.*, ¶ 27. It was Plaintiff's understanding that images labeled "free to use, share or modify, even commercially" could be used free of charge without attribution. *Id.*, ¶ 30.

Plaintiff posted five images (the "Images") on its website that were allegedly made available online by Defendants free of charge, but the Complaint does not specify when or from what website Plaintiff obtained the Images. In March 2019, Plaintiff received a letter from an unspecified Defendant or Defendants demanding payment of $9,200 for use of the Images. Plaintiff alleges that it removed the Images from its website after it received the March 2019 letter.

Counsel for Plaintiff attempted to negotiate a settlement with a "Claims Resolution Specialist" employed by defendant Higbee & Associates, *id.* at 7, ¶ 39, but no settlement was reached. Defendants allegedly threatened litigation, seeking up to $150,000 in damages, and mailed Plaintiff a draft complaint which they represented they would file if Plaintiff did not resolve the matter within fifteen days.

Plaintiff asserts that Defendants do not have a valid copyright claim for the Images and that Defendants "intentionally lure[]" consumers to use their images with the claim

that they are free to use, "then extort[] the deceived consumers to make a profit." (Doc. 1 at 8, ¶ 51.) The Complaint alleges that Plaintiff has identified "many victims" of Defendants' purported scheme. *Id.* at 7, ¶ 44.

The Complaint seeks a declaratory judgment that Plaintiff's use of the Images was not copyright infringement. It further alleges violations of RICO predicated on mail fraud and seeks a court order requiring Mathew Higbee to "divest himself of any direct or indirect interest in defendants Higbee & Associates [or] RM Media," *id.* at 12, ¶ 80, requiring Nicholas Youngson to divest himself of any interest in RM, "impos[ing] reasonable restrictions on defendants Higbee and Youngson[,]" *id.*, ¶ 82, and dissolving Higbee & Associates and RM. Based upon the same allegations, the Complaint also asserts Defendants knowingly and willfully violated GBL § 349 for unfair and deceptive business practices for which Plaintiff seeks treble damages along with its attorney's fees and costs.

## II. Conclusions of Law and Analysis.

The Higbee Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly allege claims for which relief can be granted. They also request dismissal of Plaintiff's RICO claim based on Plaintiff's failure to timely file a RICO case statement ("RCS") as required by the Western District of New York's Local Rules of Civil Procedure. RM moves to dismiss Plaintiff's claims on three grounds: under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim. RM also asks the court to dismiss Plaintiff's RICO claim due to Plaintiff's failure to timely file an RCS.

### A. Whether RM Received Adequate Service of Process.

In RM's motion to dismiss and accompanying papers, counsel for RM represents that the date on which RM was served with the Summons and Complaint is unknown. RM therefore asks the court to accept its motion to dismiss *nunc pro tunc* if it is untimely or, in the alternative, to dismiss the Complaint for insufficient service of process pursuant

3

to Federal Rule of Civil Procedure 12(b)(5). Plaintiff has not responded to RM's arguments concerning the sufficiency of service.

Federal Rule of Civil Procedure 4(f) governs service of a party outside of the United States and provides that such service may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial Documents[.]" Fed. R. Civ. P. 4(f)(1). Rule 4(f) recognizes alternative methods of acceptable service where no internationally agreed method applies. *See* Fed. R. Civ. P. (4)(f)(2). When a defendant seeks dismissal for insufficient service of process under Rule 12(b)(5), "the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

RM concedes that it eventually received a copy of the Summons and Complaint. As no valid return of service has been filed, the court is unable to ascertain when RM was served through its accountant. Because there is no dispute that RM received the Complaint and corresponding notice of Plaintiff's claims against it, the court accepts RM's motion to dismiss as timely filed. The court therefore need not and does not determine whether Plaintiff has established that it obtained adequate service of RM.

**B.     Whether RM Is Subject to Personal Jurisdiction in This Court.**

RM seeks dismissal on the basis that the court does not have personal jurisdiction over it because it is a corporation created and existing under the laws of the United Kingdom, where its principal place of business is located. "In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution," a federal district court's personal jurisdiction over a foreign corporation depends on the law of the forum state. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

4

Because RM has moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Plaintiff bears the burden of making a "prima facie showing that jurisdiction exists." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citation omitted). In opposing RM's motion to dismiss, Plaintiff argues that the court has specific personal jurisdiction over RM pursuant to New York's Long Arm Statute, N.Y.C.P.L.R. § 302 ("CPLR § 302") because RM's efforts to enforce its copyrights in New York constitute the transaction of business in the state. To determine whether specific personal jurisdiction exists, the court considers first whether "the individual or entity has purposefully directed his activities at the forum and the litigation arises out of or relates to those activities[,]" and second "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *In re del Valle Ruiz*, 939 F.3d 520, 529 (2d Cir. 2019) (internal alterations, quotation marks, and citations omitted).

CPLR § 302 provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent" "transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" CPLR § 302(a)(1). To assess whether jurisdiction is proper, courts ask "(1) whether a defendant has transacted business in such a way that it constitutes purposeful activity; and (2) whether there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 497 (S.D.N.Y. 2016) (quoting *DNT Enters., Inc. v. Tech. Sys.*, 333 F. App'x 611, 613 (2d Cir. 2009)).

Where a party's website is cited as evidence that it transacts business in New York, a court may consider the website's level of interactivity, ranging from a passive website that "primarily make[s] information available to viewers but do[es] not permit an exchange of information" to a website through which "the defendant clearly does business over the [i]nternet[.]" *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 335 (E.D.N.Y. 2013) (citations omitted). "[I]nteractive" websites "permit the exchange of

information and may subject a defendant to personal jurisdiction, depending on the level and nature of the exchange." *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 357 (S.D.N.Y. 2014) (internal brackets, quotation marks, and citation omitted). However, a website's interactivity is merely one factor in determining whether the defendant "through the website, purposefully availed himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc.*, 490 F.3d at 252 (internal quotation marks, brackets, and citation omitted).

Plaintiff alleges that Defendants made the Images available online "for free, even for commercial re-use." (Doc. 1 at 7, ¶ 46.) To the extent that this allegation describes a "passive" website where consumers can find images but not exchange information with RM, operating the site would not alone qualify as "transacting business" pursuant to CPLR § 302. Plaintiff cites no evidence that RM targeted New York State or its residents, and, indeed, concedes RM's websites are accessible by internet users nationwide. *See Best Van Lines, Inc.*, 490 F.3d at 253 (observing that online content that was not "purposefully directed to New Yorkers rather than a nationwide audience" was not evidence of purposeful activity in New York sufficient to support personal jurisdiction); *see also Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (internal quotation marks and citation omitted) (noting that under New York law "the mere solicitation of business within the state does not constitute the transaction of business within the state" and holding website did not provide a basis for personal jurisdiction over defendant under CPLR § 302(a)(1)).

RM acknowledges that it has a commercial interest in offering images online because doing so drives business to RM's websites. It also acknowledges that it requires a user of its images to agree to certain licensing conditions. Plaintiff's use of the images was subject to a license that permits "[s]haring, copying[,] and redistributing in any medium or format . . . even commercially" conditioned on the requirement that "attribution is required to obtain and maintain a license." (Doc. 1-4 at 3.) RM also posted an additional notice with each Image stating:

6

> RM Media Ltd[.] offers a small percentage of [its] stock for free under a Creative Commons Attribution-ShareAlike license which allows publishers access to high quality images at no cost in return for a link to one of RM Media's web sites. Please do not abuse this service.
>
> *Images are free of monetary charges. However, licenses are conditioned on attribution and other Creative Commons requirements being met and maintained. Licenses are automatically revoked if attribution requirements are not maintained.

*Id.* at 4.

Plaintiff's claims arise out of its access to the Images posted on RM's website, its failure to comply with the license requirement of attribution, and RM's efforts to enforce its copyright for the Images in New York state.[2] "A single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where the defendant never enters the state, if the claim arises out of the transaction." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). On this basis, although a close question, Plaintiff has satisfied its burden of establishing that RM transacted business in New York sufficient to support specific personal jurisdiction. *See DiStefano v. Carozzi N.A., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (holding that in deciding pre-discovery whether personal jurisdiction exists, the trial court must "construe the pleadings . . . in the light most favorable to [Plaintiff], resolving all doubts in [its] favor.").

Having determined that there is a basis for personal jurisdiction over RM under CPLR § 302, the court analyzes whether its exercise of jurisdiction over RM "comports with due process protections established under the Constitution." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). In the context of personal jurisdiction, "[c]onstitutional due process assures that . . . the maintenance of a lawsuit" against a defendant in a given forum "does not offend 'traditional notions of fair play and

---

[2] Contrary to Plaintiff's contention, it is not "outrageous" that RM threatened to file suit in the Western District of New York and then sought dismissal based on a lack of personal jurisdiction. (Doc. 17 at 4.) A party submits to a court's jurisdiction without a minimum contacts analysis when it files suit. *See Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) (noting that the plaintiff had, "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court"). RM did not file suit in this forum.

substantial justice.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 328 (2d Cir. 2016) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

If the plaintiff has alleged that the defendant has "certain minimum contacts with the relevant forum" such that it has "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there[,]" the defendant must "present a compelling case that . . . other considerations would render jurisdiction unreasonable" to defeat jurisdiction on due process grounds. *Eades*, 799 F.3d at 168-69 (internal quotation marks and citations omitted). Those considerations include "the burden that the exercise of jurisdiction will impose on the defendant[,]" the forum state's interest in adjudicating the case, "the plaintiff's interest in obtaining convenient and effective relief[,]" the judicial system's interest in efficient resolution of the case, and the "shared interest of the states in furthering substantive social policies." *Id.* at 169 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

Although the constitutional due process inquiry and specific personal jurisdiction under CPLR § 302 are "not coextensive," the Second Circuit has noted that only in "rare" cases would due process concerns override specific jurisdiction under the statute. *Id.* at 168 (citation omitted). Plaintiff has plausibly alleged that RM had sufficient minimum contacts with New York for RM to anticipate that it might be haled into court there for a claim arising out of those contacts. RM, in turn, has not presented a "compelling case" that jurisdiction in New York would infringe its right to due process. While the inconvenience of defending against an action in an overseas court is clear, RM has not identified any specific burden it would face if required to do so. *See Chloé*, 616 F.3d at 173 (finding due process requirement for personal jurisdiction was satisfied notwithstanding any inconvenience to an individual defendant). New York has an interest in protecting consumers from allegedly deceptive commercial practices, and Plaintiff, a resident of New York, has an interest in seeking relief in a convenient forum. There is also a judicial interest in the adjudication of Plaintiff's claims based on New York law in a forum that is familiar with it.

Because the court has preliminarily determined that it has personal jurisdiction over RM under CPLR § 302, RM's motion to dismiss for lack of personal jurisdiction is DENIED. The court declines to address Plaintiff's alternative argument that Fed. R. Civ. P. 4(k)(2) provides an independent basis for personal jurisdiction.

### C. Whether Plaintiff's RICO Claim Should be Dismissed For Failure to Comply With the Local Rules.

RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). 18 U.S.C. § 1964(c) creates a private cause of action for a RICO violation provided the person bringing the claim is "injured in his business or property by reason of" that violation. To plead a civil RICO claim, the plaintiff must plausibly allege: "(1) a violation of [RICO]; (2) an injury to business or property; and (3) that the injury was caused by the [RICO] violation[.]" *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)).

This district's Local Rules require a party asserting a RICO claim to file contemporaneously and serve an RCS "under separate cover" stating "in detail and with specificity" the information required by the Local Rule. L. R. Civ. P. 9. While the court may grant an extension of time, failure to file the RCS is grounds for dismissal. *See id.* ("A party's failure to file a RICO Case Statement may result in dismissal of the party's RICO claim[.]").

Although the Complaint alleges a RICO violation, Plaintiff did not file an RCS pursuant to Local Rule 9 contemporaneously with its Complaint and did not seek an extension of time to do so. After the Higbee Defendants asked the court to dismiss Plaintiff's RICO claim for failure to comply with Local Rule 9, Plaintiff subsequently filed an RCS on August 27, 2019, the same date on which it opposed the Higbee Defendants' motion.

In its Complaint, Plaintiff makes certain key allegations based only "upon information and belief:"

> Upon information and belief, defendants Youngson and RM[] either commanded or aided and abetted the violations [of] 18 U.S.C. § 1341 by making Higbee & Associates their power of attorney.
>
> Upon information and belief, defendants conspired to violate 18 U.S.C. § 1341[.]
>
> . . .
>
> Upon information and belief, defendants have derived substantial income, either directly or indirectly, through their pattern of racketeering activity in violation of 18 U.S.C. § 1962.

(Doc. 1 at 10-11, ¶¶ 71-72, 74.) Pleading "upon information and belief" is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "boilerplate and conclusory allegations" and "[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (emphasis, citations and internal quotation marks omitted). That standard is not met here. In addition to these pleading deficiencies, as Defendants point out, the Complaint's allegations conflict with the RCS in terms of who participated in the alleged predicate acts and which Defendants comprised the RICO enterprise.[3] In opposition to RM's motion to dismiss, Plaintiff erroneously contends that it has "consistently alleged [RM's] specific involvement in the enterprise." (Doc. 17 at 13.)

The RCS and the Complaint further diverge with respect to Plaintiff's allegations of injury. Whereas the Complaint asserts only that "Plaintiff's business has been damaged by reason of defendants' substantive violations of [RICO][,]" Doc. 1 at 12, ¶ 79,

---

[3] The RCS represents that only the Higbee Defendants participated in the alleged predicate acts, *see* Doc. 10 at 3, and that the RICO enterprise consisted solely of Mathew Higbee and Higbee & Associates and that Youngson and RM are separate therefrom. *See id.* at 5 (identifying the "enterprise" as "[Mathew] K. Higbee, Esq. and Higbee & Associates[,]" and asserting that RM and Youngson are "separate from the enterprise but . . . perpetrator[s] of the racketeering activity.").

10

and that the amount of those damages exceeds $1,000, the RCS states that Plaintiff has suffered damages of approximately $20,000 attributable to "outside legal counsel fees incurred[,]" (Doc. 10 at 7), and seeks to recover lost income Plaintiff has been unable to earn due to the time Plaintiff has devoted to prosecuting this case. *See Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 272-73 (1992) (holding that plaintiffs could not plausibly state a RICO claim where they failed to plead an injury directly caused by alleged unlawful conduct).

Because the discrepancies between Plaintiff's Complaint and its RCS are material and cannot be reconciled, and because Plaintiff offers no excuse for its untimely filing of the RCS, Plaintiff's RICO claims are DISMISSED for noncompliance with Local Rule 9. *See Burmaster v. Pfizer Inc.*, 2018 WL 5779133, at *12 (W.D.N.Y. Apr. 23, 2018) (recommending that RICO claims be dismissed for failure to file RCS), *report and recommendation adopted*, 2018 WL 5777032 (W.D.N.Y. Nov. 2, 2018); *Snyder v. U.S. Equities Corp.*, 2014 WL 317189, at *6 (W.D.N.Y. Jan. 28, 2014) (dismissing RICO claims where plaintiff failed to file RCS and provided no explanation as to why); *Kapner v. Riverside Wine & Liquor, Inc.*, 2011 WL 5154608, at *8 (W.D.N.Y. Oct. 28, 2011) (dismissing RICO claims where Plaintiff failed to file RCS until three months after filing of complaint and there was no evidence of excusable neglect).

### D. Whether Plaintiff Has Stated a Plausible Claim Under GBL § 349.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action,

11

supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. GBL § 349(a). Subsection (h), which creates a private right of action, provides:

> [A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

*Id.* § 349(h). To plausibly state a GBL § 349 claim, a plaintiff must allege that the defendant "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

Conduct is consumer-oriented if it "potentially affects similarly situated consumers" or has an impact on "consumers at large[,]" even if a pattern of conduct is not alleged. *Violet Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 390 (W.D.N.Y. 2017) (internal brackets and emphasis omitted) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y.

12

1995)). "[F]or a claim to classify as consumer-oriented, a plaintiff must plead . . . injury to the public generally, rather than to himself alone." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Private disputes "unique to the parties" are not within the scope of GBL § 349. *Id.* (citation omitted).

Conduct is "materially misleading" if it would be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745. A reasonable consumer for purposes of a GBL § 349 analysis "does not lack common sense" and is not assumed to be "the least sophisticated consumer." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018). Affirmative actions as well as omissions may both qualify as deceptive acts or practices. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005).

Courts applying New York law have recognized cognizable injuries under GBL § 349 where a plaintiff alleges that "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. However, to allege an injury compensable under the statute, a plaintiff must assert a plausible a "connection between the misrepresentation and some harm from, or failure of, the product[.]" *Id.* (noting that GBL § 349 recognizes injuries including the price paid for a consumer good or the price of a contract when the counterparty failed to perform). Defendants challenge Plaintiff's ability to satisfy the plausibility standard with regard to each prong of Plaintiff's GBL § 349 claim.

### 1. Whether Plaintiff Has Plausibly Alleged Defendants' Conduct Was Consumer-Oriented.

Plaintiff claims that RM committed allegedly misleading consumer-oriented conduct by offering images "free to use" without qualifying that such use was subject to the terms of a license. It also contends that Higbee Defendants targeted consumers with allegedly baseless copyright claims and threats of litigation. Plaintiffs contend that other businesses have been "victims" of Defendants' purported scheme. When these claims are

construed in the light most favorable to Plaintiff, they adequately allege acts that are "consumer-oriented in the sense that they potentially affect[] similarly situated consumers" sufficient to satisfy the consumer-oriented conduct requirement of GBL § 349. *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016); *see id.* at 642 (observing that the Second Circuit and the New York Court of Appeals have held that alleging a representation with a potential effect on other consumers satisfies the consumer-oriented prong). In addition, RM's "website . . . and disclosures are plainly geared toward consumers," indicating that other internet users could be susceptible to "the same allegedly deceptive conduct." *Id.* at 644 (internal quotation marks and citation omitted).

### 2. Whether Plaintiff Has Plausibly Alleged Defendants' Conduct Was Materially Misleading.

Plaintiff further alleges that RM's purported representation that its images are "free to use" is materially misleading. In most cases, whether a representation would mislead a reasonable consumer is a question of fact. *See Eidelman v. Sun Prods. Corp.*, 2017 WL 4277187, at *3 (S.D.N.Y. Sept. 25, 2017) (citing cases and noting that a reasonable consumer's interpretation of a seller's representation is generally an issue of fact). However, in *Oswego*, the New York Court of Appeals made clear that a court may determine whether a statement would mislead a reasonable customer "as a matter of law or fact (as individual cases require)[.]" 647 N.E.2d at 745; *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing *Oswego* in support of court's authority to determine as a matter of law whether a claim would mislead a reasonable consumer).

Plaintiff's allegation that RM made materially misleading statements fails to acknowledge the clear, prominent, and unambiguous language of the license requiring attribution for any images used, which was displayed in several places on RM's website. Where a disclaimer is available to a plaintiff before it engages in a transaction, the court may find that "a reasonable consumer would not have been misled by" the defendants' alleged misrepresentations as a matter of law. *Kommer v. Bayer Consumer Health*, 252

14

F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (citing *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996)).

Plaintiff does not allege that it obtained the Images directly from RM's website or that it viewed the warnings regarding the terms of the license and attribution requirement prior to using the Images. Instead, it asserts that "[e]ach of the subject [I]mages was optimized to appear at the top of an advanced image search filtered for images that were specifically labeled with the usage rights 'free to use, share or modify, even commercially[,]'" and refers to an exhibit that appears to depict filtered Google Image searches. (Doc. 1 at 6, ¶ 33; *see also* Doc. 1-3 at 2-6.) Plaintiff does not further allege that Defendants themselves are responsible for the label affixed to the Images by third parties' search engines.[4] Because Plaintiff fails to allege that Defendants themselves represented that Plaintiff could use the Images free of charge without attribution, Plaintiff has failed to plausibly allege that Defendants made a materially misleading representation. *See Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) ("Where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff, an action under GBL § 349 will not lie.") (internal quotation marks and citation omitted). This conclusion is underscored with regard to the Higbee Defendants because Plaintiff fails to allege the materially misleading statement they made upon which Plaintiff relied to its detriment.

### 3. Whether Plaintiff Has Plausibly Alleged an Injury Resulting From Defendants' Acts or Practices.

Finally, Plaintiff alleges that "[b]y reason of defendants' deceptive business practices, plaintiff has been damaged in an amount exceeding $1,000.00." (Doc. 1 at 13, ¶ 90.) This assertion is "devoid of further factual enhancement" and constitutes a "formulaic recitation" of the injury element of Plaintiff's GBL § 349 claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Failure to provide more than

---

[4] *See* Doc. 1 at 2, ¶ 4.c. ("[T]he photos are made readily available on the Internet under the label 'usage rights: free to use, share or modify, even commercially[.]'"); *id.* at 6, ¶ 33 (asserting that "[e]ach of the subject images was optimized to appear" under the foregoing label).

15

"conclusory allegations" is grounds for dismissal. *Roth v. CitiMortgage Inc.*, 2013 WL 5205775, at *12 (E.D.N.Y. Sept. 11, 2013) (granting motion to dismiss GBL § 349 claim and finding that "[e]ven if defendant engaged in materially misleading conduct," plaintiff's bare allegation that she suffered "reasonably expected economic damages and emotion[al] distress" was insufficient to state a plausible claim for relief), *aff'd*, 756 F.3d 178 (2d Cir. 2014). As such, Plaintiff has not plausibly alleged a claim of injury. *See Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) ("Bare recitation of the elements of a cause of action under GBL §[] 349 . . . meaning mere conclusory statements, is insufficient to rise to the level of a plausible claim.").

In addition, because GBL § 349(h) caps the award of treble damages in a suit by a private plaintiff at "a maximum of $1,000[,]" *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000), even if Plaintiff could plausibly plead a claim under GBL § 349, the amount in controversy would not satisfy the requirements for diversity jurisdiction. *See Wright v. Musanti*, 887 F.3d 577, 584-85 (2d Cir. 2018) (recognizing that although "diversity need not be established until diversity becomes necessary to establish federal subject matter jurisdiction[,]" "Congress has limited diversity jurisdiction to cases involving an amount in controversy of more than $75,000"). For these reasons, the Higbee Defendants' and RM's motions to dismiss Plaintiff's GBL § 349 claims are GRANTED.

### E. Whether Plaintiff Has Plausibly Alleged a Declaratory Judgment Claim.

The DJA provides that "[i]n a case of actual controversy within its jurisdiction," a federal court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A "controversy" within the meaning of the DJA exists only between "parties having adverse legal interests." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a

plausible underlying claim for relief. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) ("The DJA is procedural only, and does not create an independent cause of action[.]") (internal quotation marks and citations omitted).

RM has not moved to dismiss Plaintiff's DJA claim and represents that it intends to respond to it in an Answer and through potential counterclaims. (*See* Doc. 19 at 8.) The Higbee Defendants seek dismissal of Plaintiff's declaratory judgment claim because they have no legal interest in the copyrights at issue and thus no legal interest adverse to Plaintiff. In *Meyer, Suozzi, English & Klein, P.C. v. Higbee*, a district court considered claims nearly identical to Plaintiff's against the same group of defendants. In that case, the plaintiff law firm sought a declaratory judgment of non-infringement and damages under GBL § 349 when Defendants allegedly demanded payment and threatened litigation based on the plaintiff's use of an image owned by Defendants. *See* 2019 WL 2085838, at *1 (E.D.N.Y. May 13, 2019). The district court found that there was no actual case or controversy within the meaning of the DJA because "the Higbee Defendants possess no adverse legal interests against the [p]laintiff." *Id.*, at *3. The Higbee Defendants were "merely agents of the copyright holders" and would have no standing to sue the plaintiff for copyright infringement independent of their representation of the owners. *Id.*

Plaintiff argues that *Meyer* is distinguishable on the grounds that the plaintiff in that case did not allege that the Higbee Defendants had any ownership interest in the copyright at issue. However, Plaintiff's own Complaint lacks any allegation that the Higbee Defendants owned the copyrights for the Images at issue. Instead, the Complaint asserts that RM is "controlled and/or operated by Higbee & Associates and/or [Mathew] Higbee." (Doc. 1 at 3, ¶ 12.) In the Complaint, Plaintiff notes that Defendants Youngson and RM provided a power of attorney to the Higbee Defendants, which vested the Higbee Defendants with

> full power and authority in determining the validity of [the potential claim for copyright infringement of the Images] and assist in any negotiation, settlement, and payment. We are further authorized to pursue any legal remedies available to our client as a result of this matter. Any attorney,

17

> staff member or agent of Higbee & Associates is hereby authorized to discuss any effort to settle and resolve the above matter.

(Doc. 1-1 at 2.) In opposing the Higbee Defendants' motion to dismiss, Plaintiff asserts that this power of attorney effectuated a "wholesale shift" of "ownership, control, and authority from some defendants to other defendants." (Doc. 11 at 11.)

"A party may not use his or her opposition to a dispositive motion as a means to amend the complaint[,]" *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007), and "a mere power-of-attorney does not confer standing to sue in the holder's own right." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 420 (2d Cir. 2015) (internal alteration and citation omitted). Where, as here, an agreement empowers one party to "sue on and collect on a claim[,]" it confers a power of attorney that is "not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Id.* at 418 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997)). Consequently, Plaintiff has failed to plausibly allege that the Higbee Defendants possess an ownership interest in the Images' copyrights. As a result, there is no controversy between Plaintiff and the Higbee Defendants that would be resolved by a declaratory judgment. The Higbee Defendants' motion to dismiss the DJA claim is therefore GRANTED.

### F. Leave to Amend.

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and instructs that "[t]he court should freely give leave when justice so requires." "[T]he usual practice is to grant leave to amend the complaint'" when the court has granted a motion to dismiss. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). However, leave to amend "should generally be denied in instances of futility, undue delay, bad faith[,] or dilatory motive[.]" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016).

Defendants have identified an array of substantive and procedural deficiencies in Plaintiff's RICO claim sufficient to persuade the court that repleading the claim is likely to prove futile. The court will not foreclose Plaintiff's opportunity to amend, but, in granting leave, reminds the Plaintiff that "[b]ecause of [the] likely powerful effect on potentially innocent defendants who face the threat of treble damages, and the concomitant potential for abuse of RICO's potent provisions, the court is aware of a particular imperative in cases such as the one at bar, to flush out frivolous civil RICO allegations at an early stage of the litigation." *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) (internal brackets, quotation marks, and citation omitted), *aff'd*, 443 F. App'x 582 (2d Cir. 2011). Any such claim must also satisfy Fed. R. Civ. P. 11. Consistent with these principles, Plaintiff is GRANTED leave to amend its Complaint within twenty (20) days of the date of this Opinion and Order.

## CONCLUSION

For the foregoing reasons, the Higbee Defendants' Motion to Dismiss (Doc. 8) is GRANTED and RM's Second Amended Motion to Dismiss (Doc. 15) is GRANTED IN PART and DENIED IN PART. Plaintiff is GRANTED leave to amend the Complaint within twenty (20) days of the date of this Opinion and Order.

SO ORDERED.

Dated this 9th day of March, 2020.

Christina Reiss, District Judge
United States District Court